Joline THIBOUTOT et al.

v.

STATE of Maine et al.

Supreme Judicial Court of Maine.

Aug. 31, 1979.

Sewall & Mittel by Robert E. Mittel (orally), Portland, for plaintiffs.

James E. Smith, Asst. Atty. Gen. (orally), Augusta, for defendants.

Before McKUSICK, C. J., and POMEROY, WERNICK, DELAHANTY, GODFREY and NICHOLS, JJ.

GODFREY, Justice.

The family of Lionel and Joline Thiboutot included eight children: four by both Lionel and Joline, one by Joline but not Lionel, and three by Lionel but not Joline. In November, 1975, Lionel Thiboutot was notified by the Maine Department of Human Services of a reduction in AFDC benefits which the Department deemed required by a change of federal regulations. The change was essentially as follows: In computing the available income of Lionel in order to determine the amount of AFDC benefits allowed for Lionel's three children of whom Joline was not the mother, the Department would no longer subtract that portion of Lionel's income which went to the support of the four children of both Lionel and Joline (those children not being *eligible for AFDC benefits*), although Lionel was required by law to support those children and in fact did support them.

The Thiboutots pursued their administrative remedies in an effort to get the Department to revise its ruling. A final adverse decision was rendered by the Commissioner on March 18, 1976. From that decision the Thiboutots filed a timely appeal under Rule 80B, M.R.Civ.P., alleging that the Commissioner's decision was in violation of state and federal welfare statutes. Both the State of Maine and David Smith, as Commissioner of the Maine Department of Human Services, were named as defendants.

On January 7, 1977, an amended complaint was filed seeking class relief as well as relief for the Thiboutots. The amended complaint, brought pursuant to 42 U.S.C. § 1983 as well as Rule 80B, alleged violation of the Social Security Act, 42 U.S.C. § 602(a)(7), and pertinent federal regulations. A motion for class action certification was filed on February 16, 1977, and granted on June 28, 1977.

A motion for a separate trial on the issue of liability was granted on June 17, 1977. On July 15, 1977, judgment was entered for the Thiboutots on the merits. Defendants were enjoined from enforcing the challenged regulation and ordered to adopt new regulations, notify all members of the Thiboutots' class of the new regulations, and pay benefits prospectively to eligible persons in the class. The trial court reserved decision on retroactivity of relief and on the right to an award of attorney's fees.

Defendants complied with the order. On February 27, 1978, final judgment was entered ordering retroactive benefits for the Thiboutots but denying plaintiffs' motions for retroactive benefits for the class and for attorney's fees. From this judgment plaintiffs appeal. The defendants have not cross-appealed. We sustain plaintiffs' appeal on the issue of attorney's fees.

I. *Retroactive Benefits*

The appellant seeks to have the defendant State of Maine adjudicated liable to pay money to the members of the class in the form of retroactive AFDC benefits. The sovereign immunity of the State of Maine precludes such a judgment unless the

state has given its consent to be sued. *Drake v. Smith*, Me., 390 A.2d 541 (1978).

The Maine Legislature has not enacted any law manifesting consent that the state be subject to suit for retroactive AFDC benefits. Section 3741 of title 22 (Supp. 1965–78) provides only as follows:

"The department is authorized to administer and operate a program of aid to dependent children within the Federal Social Security Act and any amendments and additions thereto."

*Drake v. Smith, supra*, makes clear that the Legislature's authorization of the state's participation with the federal government in a cooperative welfare program, such as aid to families with dependent children, does not itself constitute an implied waiver of sovereign immunity. *Id.* at 545.

█ Appellant contends, however, that waiver of the state's sovereign immunity may be found in the promulgation of certain regulations by the Department of Human Services which, in appellant's view, mandate the payment of retroactive AFDC benefits to the class. We disagree with appellant's interpretation of those regulations.

Appellant relies on the following provision of the Maine Public Assistance Payments Manual (MPAPM):

"If the agency's original action is reversed or in any other way modified causing a decision favorable to the claimant, the agency will take immediate steps to insure that within the 60 day period that corrected payments are made retroactively to the date the incorrect action was taken or to the date of application, whichever was later." Maine Public Assistance Payments Manual (MPAPM) ch. I, sec. C, p. 7 (Dec., 1978 Revision).[1]

The regulations contain nothing to suggest that "the claimant" includes other recipients of aid who are in a position similar to that of the claimant but have not made application for review by means of the available administrative and judicial remedies. In the first place, the provision relied on calls for retroactive payments only from the date of claimant's application if that date is later than the date of the incorrect action. Such a provision is not consistent with a purpose of affording full restitutionary relief for correction of the administrative error.

Furthermore, the context of the quoted language indicates that only persons who seek administrative and judicial review of the reduction in AFDC benefits—in this case the Thiboutots themselves—may be considered "claimants". On page 1 of Chapter I, Section C, the regulations state:

"Federal and State law assure that any claimant, or anyone acting responsibly in his behalf, who believes that proper consideration has not been given to all circumstances surrounding his claim for assistance may request a fair hearing."

The regulations then detail the procedure by which administrative review of an adverse decision by the Department may be obtained. On page 4 of Chapter I, Section C, the regulations continue:

"The State agency may respond to a series of individual requests for fair hearings by conducting a single group hearing. . . . In all group hearings, whether initiated by the agency or by the claimants, the policies governing fair hearings will be followed."

Here the term "claimants" is used to refer to those individuals who have requested hearings. Moreover, at the time the present action was brought, the paragraph immediately preceding the language appellants rely on provided as follows:

"Within 5 days of the decision, a letter will be sent over the Commissioner's signature, advising the claimant of the fair hearing decision and of his right to judicial review under the Maine Rules of Civil Procedures [*sic*] Rule 80B, if he is dissatisfied with the decision. The letter will advise the claimant that if he wishes to take advantage of this right, he must file a petition for review with the Superi-

---

1. The quoted provision was in effect at the time the present action was brought.

or Court within 30 days of the receipt of the decision with which he is dissatisfied.[2] Again "claimant" is used to mean an individual who has actually sought administrative review of an agency decision.

We conclude that the regulations did not call for the payment of retroactive AFDC benefits to the unnamed members of the class in the present action. The judgment of the Superior Court, awarding retroactive AFDC benefits to the Thiboutots but not to the members of the class, is thus consistent with our interpretation of the departmental regulations, namely, that they require limited retroactive payments only to those who have been "claimants" actually pursuing their rights under the regulations. The promulgation of those regulations cannot be regarded as amounting to a waiver of sovereign immunity for purposes of appellants' action to recover retroactive benefits for all persons in their class.

▪ Appellants contend that the state may not assert sovereign immunity as a bar to their class action because each member of the class had a property right in correct AFDC payments and thus their property was taken by the state without just compensation. They cite *Foss v. Maine Turnpike Auth.*, Me., 309 A.2d 339 (1973), for the proposition that sovereign immunity is not available.to the state to bar a citizen's claim for just compensation arising from a violation of the just-compensation clauses of the federal and state constitutions. U.S.Const. amend. V per amend. XIV; Me.Const. art. I, § 21.

▪ Despite occasional suggestions that the right to welfare aid should be regarded as a property right, as distinguished from a mere gratuity, *e. g., Goldberg v. Kelly*, 397 U.S. 254, 262 n. 8, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970),[3] not all the rights normally associated with ownership of property are available to recipients under the welfare laws and regulations. For example, the federal welfare regulations themselves impose limits on the extent to which state plans may provide for retroactive corrective payments. Thus the federal requirement that a state plan provide for prompt correction of underpayments is in terms conditioned on the existence in the plan of a provision for recoupment of overpayments. 45 C.F.R. § 233.20(a)(12)(ii). Moreover, in such a state plan, "retroactive corrective payments shall be made only for the 12 months preceding the month in which the underpayment is discovered,"[4] 45 C.F.R. § 233.-20(a)(12)(ii)(*a*), and "no retroactive payment need be made where the administrative cost would exceed the amount of the payment," 45 C.F.R. § 233.20(a)(12)(ii)(*c*).

If the right to correct payments of welfare aid were a property right like the right to payments under an annuity contract or the right to rent under a lease, the correction of underpayments could not be curtailed in such a manner. In view of the qualified nature of welfare rights, cases denying the defense of state immunity where plaintiff's property has been taken by the state without just compensation cannot be relied on as precedents controlling the disposition of a class claim for retrospective welfare benefits.

▪ The state did not appeal the award of retroactive benefits to the Thiboutots.

2. This paragraph was revised in December of 1978 and presently states:

"Within five days of the decision by the Hearing Officer the copy of the decision, its basis' (as described previously) and of the claimant's rights to judicial review under Maine Rules of Civil Procedures [*sic*] Rule 80B if dissatisfied will be mailed to the claimant. The notice will also advise the claimant that if he wishes to take advantage of this right, he must file a petition for review with the Superior Court within 30 days of the receipt of the decision with which he is dissatisfied." [*sic*]

3. Citing C. Reich, *Individual Rights and Social Welfare: The Emerging Legal Issues*, 74 Yale L.J. 1245, 1255 (1965). *See also* H. Jones *The Rule of Law and the Welfare State*, 58 Colum. L.Rev. 143, 154–55 (1958), and *see generally* C. Reich, *The New Property*, 73 Yale L.J. 733 (1964).

4. Applied literally in the instant case, this regulation would lead to the absurd result that because plaintiffs discovered the underpayment promptly they could recover little or nothing.

We reject appellant's suggestion that the state's failure to appeal from the judgment for the Thiboutots constitutes a waiver of sovereign immunity in the class action. The judgment of the trial court afforded exactly the relief contemplated by the departmental regulations.

■ The complaint in the present action was amended to include a cause of action under 42 U.S.C. § 1983 [5] on the basis that defendants were "persons" who had deprived plaintiffs of their rights "secured by the Constitution and laws" by violating 42 U.S.C. § 602(a)(7) (a provision of the federal Social Security Act setting forth the basic requirements for state AFDC programs) and 45 C.F.R. § 233.20(a)(3)(ii)(D), a federal welfare regulation defining available income and resources of recipients. In his judgment, the trial justice found that the defendants were violating 42 U.S.C. § 602(a)(7) and the cited welfare regulation but made no finding with respect to violation of 42 U.S.C. § 1983. Appellants contend that the rights defendants deprived them of under color of state regulation were rights "secured by the Constitution and laws" and hence within the ambit of section 1983.

Arguing that the federal courts have exclusive jurisdiction to hear actions under section 1983, appellees assert that the Superior Court had no jurisdiction to hear and determine appellants' section 1983 claim. However, the better considered cases hold that federal and state courts have concurrent jurisdiction to entertain such actions. *E. g., Brown v. Pitchess*, 13 Cal.3d 518, 119 Cal.Rptr. 204, 531 P.2d 772 (1975); *Terry v. Kolski*, 78 Wis.2d 475, 254 N.W.2d 704 (1977). *Contra, Chamberlain v. Brown*, 223 Tenn. 25, 442 S.W.2d 248 (1969). Adjudicating federal claims against state governments in the state courts is likely to produce less friction in federal-state relations and is consistent with the concept of feder-

alism expounded in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The Superior Court had jurisdiction to entertain a claim under section 1983.

■ Contrary to another argument made by the appellees, the fact that the trial justice made no finding or mention of a violation of section 1983 in his order and judgment is not in itself conclusive against appellees' liability under that section. *See Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Seals v. Quarterly County Court*, 562 F.2d 390 (6th Cir. 1977). The 1983 claim was properly raised before the trial court and cannot be disregarded by the Law Court on appeal merely because the judgment of the trial court made no mention of it.

■ Whether the appellees' violation of the federal social security law and regulations, with resulting incorrect reduction of AFDC benefits to appellants, constitutes a violation of section 1983 is by no means clear. It had been assumed in a succession of cases in the Supreme Court that section 1983 afforded an appropriate remedy for violation of rights under the federal welfare laws. *See Rosado v. Wyman*, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), and other cases cited by Stewart, J., dissenting in *Chapman v. Houston Welfare Rights Organization*, —— U.S. ——, ——, 99 S.Ct. 1905, 1944–45, 60 L.Ed.2d 508, 557–58 (1979). However, the *Chapman* case itself brought to the surface serious differences of opinion within the Court over whether section 1983 encompasses a deprivation of rights arising solely out of the Social Security Act. *Chapman* did not resolve the issue, holding only that federal district courts have no jurisdiction under subsection (3) and (4) of 28 U.S.C. § 1343 to entertain a claim under section 1983 that a state welfare regulation is invalid merely because it conflicts with the Social Security

5. Section 1983 provides as follows:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

Act. From the several opinions in *Chapman*, it appears that four members of the Court think section 1983 is available for relief in such a case and three think it is not. Two Justices, members of the majority, expressed no opinion on the scope of section 1983.

With some hesitancy in view of the close division in *Chapman*, we conclude that section 1983 afforded appellants a remedy in the Superior Court for deprivation of rights under the Social Security Act even though those rights were not of constitutional dimension. Until the Supreme Court has spoken definitely to the contrary, we think it would be incorrect to ignore the long line of federal cases in which section 1983 has been treated without question as a proper vehicle for such relief. Nevertheless, appellants' claim for retroactive benefits for the class is barred by the sovereign immunity of the State of Maine.

In *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Supreme Court held that the immunity of the states under the Eleventh Amendment[6] bars recovery in a federal district court of retrospective welfare benefits erroneously denied by state officials before entry of the federal court's order determining the wrongfulness of their action. The Court distinguished *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which had held that a federal court could, without violating the Eleventh Amendment, enjoin state officials to conform their future conduct to the requirements of federal law even though the injunction might have some fiscal impact on the state. The Court based the distinction on the difference between prospective and retrospective relief, the latter being perceived as having potential for more drastic impact on state treasuries.

Although the rationale of *Edelman* seemed to be placed in some doubt by the decision in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), holding municipalities to be "persons" subject to 1983 actions for both prospective and retroactive relief in federal courts,[7] a recent decision, *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), has reaffirmed *Edelman*, interpreting it as holding that Congress did not intend to abrogate the states' sovereign immunity when it enacted section 1 of Civil Rights Act of 1871, the precursor of section 1983. In the course of his opinion expressing the view of a majority of the Court, Mr. Justice Rehnquist said:

> "Given the importance of the States' traditional sovereign immunity, if in fact the Members of the 42d Congress believed that § 1 of the 1871 Act overrode that immunity, surely there would have been lengthy debate on this point and it would have been paraded out by the opponents of the Act along with the other evils that they thought would result from the Act. Instead, § 1 passed with only limited debate and not one Member of Congress mentioned the Eleventh Amendment or the direct financial consequences to the States of enacting § 1. We can only conclude that this silence on the matter is itself a significant indication of the legislative intent of § 1." 440 U.S. at 343, 99 S.Ct. at 1146, 59 L.Ed.2d at 368.

See also *Alabama v. Pugh*, 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978). The majority of the Justices in *Quern v. Jordan* reached their decision by interpreting the word "person" in section 1983 as excluding the states because of their sovereign immunity. Justices Brennan and Marshall, concurring in the result, observed that the actual decision did not require such a rationale and objected to it. We consider the

---

6. U.S.Const. amend. XI, provides as follows:
 "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

7. *Monell* overruled *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), which had held that a municipality was not a "person" within the meaning of section 1983.

issue to be still not definitively resolved by the Supreme Court.

Appellants in the instant case contend that *Edelman* and other federal decisions according immunity to the states in 1983 actions brought in federal court for retrospective damages are not applicable in a state court, where the Eleventh Amendment creates no problem. However, a theme running pervasively through the federal decisions is that unless a state has consented to being sued for retrospective welfare benefits mistakenly withheld, it should be immune to section 1983 actions for their recovery. The liability for such benefits is peculiar: First, unlike liability in tort, liability for such benefits to a class does not typically arise from wilful or even negligent wrongdoing; underpayment of welfare benefits to a class is more likely to result from good-faith misinterpretation of the complex federal regulations under which welfare programs must be administered. Second, the financial burden on the state treasury to meet retrospective payments of welfare benefits may become great if a large class of welfare recipients has been affected for a long time. The many pressing needs for welfare assistance and the practical difficulty some states encounter in raising matching funds to meet them adequately suggest caution about compelling state welfare officials to assign priority, in effect, to correcting past underpayments, which can amount to large sums, ahead of current and perhaps more critical needs.[8] The limitations, referred to earlier in this opinion, contained in the social security regulations themselves suggest strongly

that correction of past underpayments is not regarded by welfare officials as a matter of highest priority in the administration of the AFDC program.

■ Though the question is not free from doubt, it is our conclusion that, in the absence of waiver by the state of its sovereign immunity, the state may constitutionally interpose that immunity as a bar to a class action brought in a state court under 42 U.S.C. § 1983 to recover the amount of past AFDC underpayments, at least where there is no allegation or evidence that the underpayments were made in bad faith for a racially discriminatory or other constitutionally impermissible purpose. Our reliance on *Edelman* and *Quern* accords with the rationale adopted by the Supreme Court of Washington in denying section 1983 relief in *Edgar v. State*, 92 Wash.2d 217, 595 P.2d 534 (1979).[9]

It is our conclusion also that the State of Maine has not waived its immunity from such a class action and has effectively asserted it to bar the class action for retroactive benefits under section 1983 in this case. We are led to this conclusion by the rationale of our decision in *Drake v. Smith*, Me., 390 A.2d 541 (1978), fortified by the considerations referred to above that have prompted the federal courts to accord the states an immunity under the Eleventh Amendment from similar actions.

## II. *Attorney's Fees*

Appellants contend that they are entitled to attorney's fees under 42 U.S.C. § 1988, as amended by the Civil Rights Attorney's Fees Awards Act of 1976, P.L. 94–559 § 2,

---

8. *See Rothstein v. Wyman*, 467 F.2d 226 (2d Cir. 1972), *cert.* denied, 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315. *But cf. Jiminez v. Weinberger*, 523 F.2d 689 (7th Cir. 1975), *cert. denied sub nom. Mathews v. Jimenez*, 427 U.S. 912, 96 S.Ct. 3200, 49 L.Ed.2d 1204 (1976) (retroactive class relief permitted against the Secretary of Health, Education and Welfare where disability insurance benefits had been denied under an unconstitutional federal statutory classification). In *Jiminez*, a case strongly relied on by appellants, no question of state sovereign immunity was involved. The United States was deemed to have waived its sovereign immunity by enacting 42 U.S.C. § 404,

providing for overpayments and underpayments of federal old-age, survivors, and disability insurance benefits. The court noted the difference between ordering a state to make payments of improperly withheld welfare benefits and ordering the Secretary to pay retroactive benefits out of the Federal Disability Trust Fund (42 U.S.C. § 401(b)) to which plaintiffs had contributed through taxation.

9. The circumstances of the *Edgar* case were entirely different from those of the instant case. However, Edgar's claim was one for money damages against the state under section 1983.

90 Stat. 2641. The last sentence of section 1988 now provides:

"In any action or proceeding to enforce a provision of [certain civil rights legislation, including 42 U.S.C. § 1983] the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

Appellants assume that P.L. 94–559 is applicable to the state courts and that the Superior Court in this case denied their motion for the award of attorney's fees in the exercise of its discretion. They insist that the legislative history of P.L. 94–559 indicates Congressional intent to restrict the judicial discretion to deny fees when a section 1983 action has been successful. Appellants' position is that only in exceptional cases are fees to be denied to a prevailing plaintiff in a section 1983 action. They rely partly on the Senate Report accompanying P.L. 94–559, which contains the following comment:

"A party seeking to enforce the rights protected by the statutes covered by S. 2278, if successful, 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.' *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)." S.Rep.No. 94–1011, 94th Cong., 2d Sess. (1976), reprinted in [1976] U.S.Code Cong. & Admin.News, pp. 5908, 5912.

 Except for some kinds of tortious conduct, the Maine state courts have no authority to include attorney's fees as part of costs in the absence of statutory authorization or agreement of the parties. The Social Security Act itself contains no such authorization applicable to the violation of 42 U.S.C. § 602(a)(7) that occurred here. If appellants have any right to attorney's fees, that right must come from the provisions of section 1988 on the basis that they have "prevailed" to some extent in their section 1983 action.

Even though appellants are barred by state immunity from recovering retrospective benefits in their class action, they have prevailed on a claim cognizable under section 1983. Both in its judgment entered July 15, 1977, and in its final judgment, the Superior Court gave plaintiffs prospective relief in the form of enjoining the defendants from enforcing the erroneous policy set forth in the departmental regulations and ordering them to amend the Maine Public Assistance Payments Manual. In its judgment of July 15, 1977, the court required defendants to certify that all members of plaintiffs' class had been notified of the new regulations and were receiving benefits accordingly.

 The trial court did not indicate whether it thought it was granting such prospective relief in response to plaintiffs' Rule 80B appeal or to the section 1983 count of the amended complaint. Although prospective relief was available through the 80B appeal alone, it was also available through section 1983 with the result that if the Civil Rights Attorney's Fees Awards Act is applicable to the state courts, the trial justice had discretion to award attorney's fees as part of plaintiff's costs. *See Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974); *Seals v. Quarterly County Court*, 562 F.2d 390 (6th Cir. 1977). It was held in the *Seals* case that the presence of a substantial constitutional claim under section 1983 justified the allowance of attorney's fees even though the relief was granted exclusively on alternative state grounds.

Nothing in the language of P.L. 94–559 indicates whether it is intended to be binding on the state courts, and the Senate and House reports concerning the measure shed no light on that question.[10] Before the amendment of 1976, the provisions of sec-

---

10. For what it may be worth, in commenting on the bill that became P.L. 94–559, Representative Drinan said that the measure "would authorize State and Federal Courts to award counsel fees in actions brought under specified sections of the United States Code relating to civil and constitutional rights." 122 Cong.Rec., No. 151—Pt. II, H 12158 at 12159 (daily ed. Oct. 1, 1976) (remarks of Rep. Drinan).

tion 1988 related in terms exclusively to actions in the federal courts.[11] Congress enacted the amendment in response to the Supreme Court's decision in *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), holding that it was error for a federal court to award attorney's fees as an element of costs in an environmental suit in equity: federal courts may not ordinarily include attorney's fees in costs without statutory authority. The genesis of the amendment was thus a case litigated in the federal court system, and the Senate and House reports address the question only in the context of federal litigation.

Although it seems extraordinary that Congress would enact a statute affecting the authority of the states to control costs in their own courts without stating explicitly its intention to do so, there can be little doubt that Congress has the constitutional power to enact a statute requiring the states to pay court costs in their own courts if it finds such a measure necessary to enforce the provisions of the Fourteenth Amendment. *See* U.S.Const. amend. XIV § 5; *Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978). The solecism, if it be one, of requiring the states to pay attorney's fees as part of costs in their own courts is not much greater than that of requiring them to do so in the federal courts, and *Hutto v. Finney, supra*, makes it clear that the Eleventh Amendment is no bar there to recovering attorney's fees against the states under section 1988. In *Hutto*, most of the Court thought that, unlike liability for retroactive damage claims, liability for attorney's fees poses no serious threat to state treasuries.

The argument in favor of construing the Civil Rights Attorney's Fees Awards Act to apply to the state courts is derived from the main purpose of the Act: namely, to encourage private citizens to take action, which they might not otherwise take, as "private attorneys general" to enforce civil

rights laws. That purpose ought to be carried out uniformly, it is said, in state courts as well as federal. The supreme courts of Alaska and Wyoming have apparently taken this view of the act, treating it as applicable to their own state courts. *Tobeluk v. Lind*, Alaska, 589 P.2d 873 (1979) (upholding a discretionary denial of fees under § 1988); *Board of Trustees v. Holso*, Wyo., 584 P.2d 1009 (1978) (upholding, in part, a discretionary award of fees under § 1988). In each case, the court assumed without discussion the applicability of the statute to state courts. The question of applicability was explicitly considered and resolved affirmatively by the New York Supreme Court, Appellate Division, Fourth Department, in *Young v. Toia*, 66 A.D.2d 377, 413 N.Y.S.2d 530 (1979). Furthermore, in a companion case, the same New York court imported into section 1988 the limitation on the trial court's discretion that the federal courts must observe under *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968) and *Northcross v. Board of Education*, 412 U.S. 427, 93 S.Ct. 2201, 37 L.Ed.2d 48 (1973). *Ashley v. Curtis*, 67 A.D.2d 828, 413 N.Y.S.2d 528 (1979).

The desirability of uniform remedies throughout the nation in civil rights actions and the unanimity of such authority on the point as so far exists persuade us that the Civil Rights Attorney's Fees Awards Act of 1976 should be applied in the state courts of Maine.

As the instant case is presented to us on appeal we cannot tell why the trial justice denied an attorney's fee as part of costs, for he stated no reasons for the denial. Appellants have treated the denial as an erroneous exercise of discretion under section 1988, but we have no way of knowing whether the trial justice denied them because he thought section 1988 inapplicable or because he had exercised his discretion under section 1988 and found the allowance

---

11. *But see Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 239–40, 90 S.Ct. 400, 24 L.Ed.2d 386 (1969) where the Court used language which seemed from context to imply that sec-

tion 1988 (before its amendment in 1976) established a rule of damages applicable in a state court in an action under 42 U.S.C. § 1982.

of attorney's fees to be inappropriate for reasons he thought sufficient. If the latter was the case, we do not know what standard he applied in considering the question.

We must therefore remand the case for reconsideration of the question of attorney's fees. Under 42 U.S.C. § 1988, the trial justice must, on remand, first exercise his discretion to determine whether plaintiffs are entitled to any award of fees. In this case, the standard for making that determination is not so nearly absolute in application as appellants suggest that it must be. Both the *Newman* and *Northcross* cases, *supra*, involved racial discrimination. In *Newman* the Supreme Court held that one who succeeds in obtaining an injunction under Title II of the Civil Rights Act of 1964 "should ordinarily recover an attorney's fee [under section 204(b) of that act] unless special circumstances would render such an award unjust." 390 U.S. at 402, 88 S.Ct. at 966. In *Northcross*, plaintiffs had prevailed in litigation aimed at desegregating the public schools of Memphis. In its judgment, the Court of Appeals for the Sixth Circuit had denied attorneys' fees without stating a reason. The Supreme Court vacated the judgment insofar as it related to denial of costs and attorneys' fees and remanded to the Court of Appeals for reconsideration in the light of the *Newman* standard.

We think the *Newman-Northcross* standard invites far more balancing of competing considerations than appellants seem to suggest,[12] and that all aspects of the case may be properly taken into account by the trial justice in the exercise of his discretion.

The fact cannot be overlooked that appellants' litigation has led to the correction of an erroneous state welfare rule with resulting long-term benefit to an indeterminate class of present and future AFDC recipients. The public has an important stake in the correct application of welfare funds, and the public interest has thus been served in some measure by this litigation. The *Newman-Northcross* standard thus provides a suitable starting point for the trial court's reconsideration of the award or denial of attorney's fees.

If the trial court decides on remand that an attorney's fee should be awarded, it may properly take into account any pertinent factors discussed in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).

Because of the possibility that review by this Court of the trial court's ultimate decision may become necessary, the record should reflect the considerations on which the trial justice bases his decision.

The entry is:

Appeal sustained.

Judgment vacated insofar as it relates to denial of attorney's fees as part of costs.

Remanded to Superior Court for reconsideration of costs in the light of the opinion herein.

ARCHIBALD, J., did not sit.

---

12. *See, e. g., Zarcone v. Perry*, 581 F.2d 1039 (2d Cir. 1978), *cert. denied*, 439 U.S. 1072, 99 S.Ct. 843, 59 L.Ed.2d 38.

As Mr. Justice Powell observed, concurring in part and dissenting in part in *Hutto v. Finney*, 437 U.S. 678, 683, 98 S.Ct. 2565, 2584 n.7, 57 L.Ed.2d 522, 546 n.7 (1978), there is nothing in the Civil Rights Attorney's Fees Awards Act that requires the "routine imposition of counsel-fee liability on anyone." He cited the House Report to P.L. 94–559 where the following passage may be found:

"2. *Judicial Discretion*

The second key feature of the bill is its mandate that fees are only to be allowed in the discretion of the court. Congress has passed many statutes *requiring* that fees be awarded to a prevailing party. Again the Committee adopted a more moderate approach here by leaving the matter to the discretion of the judge, guided of course by the case law interpreting similar attorney's fee provisions. This approach was supported by the Justice Department on Dec. 31, 1975. The Committee intends that, at a minimum, existing judicial standards, to which ample reference is made in this report, should guide the courts in construing H.R. 15460." H.R.Rep.No.94–1558, 94th Cong., 2d Sess. (1976).