LIBERTY MUTUAL INSURANCE
COMPANY, et al.

v.

DIRECTOR, MAINE BUREAU
OF LABOR STANDARDS.

Supreme Judicial Court of Maine.

Argued Sept. 29, 1992.

Decided Oct. 23, 1992.

Kevin M. Gillis (orally), Richardson &
Troubh, Portland, for plaintiffs.

Jeffrey Frankel (orally), Asst. Atty. Gen.,
Augusta, for defendant.

Before WATHEN, C.J., and ROBERTS,
GLASSMAN, CLIFFORD and COLLINS,
JJ.

WATHEN, Chief Justice.

Plaintiffs Liberty Mutual Insurance
Company, Liberty Mutual Fire Insurance
Company, and Liberty Insurance Corpora-
tion (Liberty) appeal from a decision of the
Superior Court (Kennebec County, *Chan-
dler, J.*) affirming the Director of the
Maine Bureau of Labor Standards' (the
"Director") refusal to refund $466,728 in
Safety Education and Training Fund as-
sessments paid by Liberty to the Director
pursuant to 26 M.R.S.A. § 61(2) (1988)[1].
Because Liberty was not a licensed work-
ers' compensation carrier in Maine after
December 31, 1987, it contends that it is
not responsible for assessments levied in
1988 and 1989 for benefits paid while doing
business as a licensed carrier in 1986 and
1987. The Superior Court ruled that Liber-
ty was responsible for the assessments.
Because any claim for a refund of the
assessments is barred by sovereign immu-
nity, we vacate the judgment and remand
for dismissal.

In 1988, the Director assessed Liberty
$243,416.61 based on workers' compensa-
tion benefits paid by Liberty in 1986. In
1989, the Director assessed Liberty $223,-
311.94 based on workers' compensation
benefits paid by Liberty in 1987. Both
assessments were made pursuant to 26
M.R.S.A. § 61(2), and were issued "as soon
as practicable" after the calendar year for
which the assessments were made, as re-
quired by statute. Liberty was a licensed

1. 26 M.R.S.A. § 61(2) reads in full as follows:

The commissioner shall annually assess a levy
based on actual annual workers' compensa-
tion paid losses, excluding medical payments,
paid in the previous calendar year by employ-
ers under Title 39, the Workers' Compensa-
tion Act. As soon as practicable after July 1st
of each year, the commissioner shall assess
upon and collect from each insurance carrier
licensed to do workers' compensation busi-
ness in the State, and each group and individ-
ual self-insured employer authorized to make
workers' compensation payments directly to
their employees, a sum equal to that propor-
tion of the current fiscal year's appropriation,
exclusive of any federal funds, for the safety

education and training division which the to-
tal workers' compensation benefits, exclusive
of medical payments, paid by each carrier or
each group or individual self-insured employ-
er, bear to the total of the benefits paid by all
carriers, and group and individual self-in-
sured employers, during the previous calen-
dar year, except that the total amount levied
annually may not exceed 1% of the total of
the compensation benefits paid by all carriers,
and group and individual self-insured employ-
ers during the previous calendar year. As-
sessments under this section shall include suf-
ficient funds to provide for training and infor-
mation activities relating to pesticides as re-
quired by section 1720, subsection 5.

carrier during 1986 and 1987 and paid both assessments promptly.

Liberty first asked the Director to refund the amount of the assessments in January 1991, almost one and one-half years after it paid the second assessment. On August 16, 1991, the Director issued a notice of final agency action denying Liberty's request for a refund and stating that the assessments were proper because they were based on benefits paid by Liberty while it was licensed to do workers' compensation business in Maine. Liberty then filed a complaint seeking review of final agency action with the Superior Court pursuant to M.R.Civ.P. 80C. The Superior Court denied the appeal and affirmed the decision of the Director, finding that the statute requires that assessments be made against all carriers who are licensed to do workers' compensation business in .the state during any year for which an assessment is levied. Liberty now appeals.

We have adopted the general principle that the sovereign cannot be sued unless the state consents by legislative enactment. *See Drake v. Smith,* 390 A.2d 541, 543 (Me.1978); *Cushing v. Cohen,* 420 A.2d 919, 923 (Me.1980). In this instance, we find no legislative waiver of immunity. Even though the named respondent is a state officer acting in his official capacity, the state is directly involved as a real party in interest. *See Drake v. Smith,* 390 A.2d at 543–44; *Cushing v. Cohen,* 420 A.2d at 923. Liberty makes no claim that the Director is personally liable for the claimed refund, so any liability to refund the assessments must arise from the Director's activities in his official capacity as an officer of the State of Maine, *see Drake v. Smith,* 390 A.2d at 543, with the result that the state would be required to pay the refund.[2]

Liberty seeks to avoid sovereign immunity by arguing that it is not seeking compensatory damages that would require the payment of money from the state treasury. Although *Drake* did involve a claim for damages, we did not limit our holding on that basis. Instead we found that "[t]he essence of the ... action is that plaintiff wants to recover money [from the State]." *Id.* The fact that Liberty's payments were deposited into a separate account to be used for a particular purpose is irrelevant. Any refund would have to be paid by the State of Maine from state funds. All assessment payments, including those paid by Liberty are state funds and are held in trust by the State Treasurer. *See* 26 M.R.S.A. § 61(1) (1988).

We have never held that sovereign immunity is confined to actions seeking damages. In *Cushing v. Cohen,* 420 A.2d at 922, we found the doctrine applicable to a declaratory judgment action. In *Thiboutot v. State,* 405 A.2d 230 (Me.1979), *aff'd,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), we concluded that sovereign immunity precluded judgment against the state for retroactive welfare benefit underpayments to other members of the plaintiff's class. *Id.* at 237. Most recently, in *Wellman v. Dep't of Human Services,* 574 A.2d 879 (Me.1990), we again held that sovereign immunity barred retroactive recovery of payments made to the state.

Sovereign immunity bars Liberty's claim because the state has not waived its immunity by legislative enactment, and Liberty seeks to have the State of Maine adjudicated liable to refund money previously paid to it.

The entry is:

Judgment vacated. Remanded to the Superior Court with directions to enter an order dismissing the action.

All concurring.

---

**2.** Because 26 M.R.S.A. § 61(2) clearly limits the obligation of any carrier to the proportion of the total appropriation that the total benefits paid by each carrier bears to the total benefits paid by all carriers during the previous calendar year, exempting carriers who paid benefits during the previous year would create a hole in the fund. Despite Liberty's argument to the contrary there is no statutory authority for filling the hole by increasing the assessment on carriers licensed during the year the assessment is levied.