State of Maine *v.* Cutler.

has not had a full hearing upon the facts, there is a proper channel for redress open to him.

*Judgment on the verdict.*

---

## State of Maine *vs.* Alvan Cutler.

Where a township of land within the State of *Maine*, was granted by the Commonwealth of *Massachusetts*, before the separation, with a reservation therein of certain lots for the support of education and of public worship in such township forever; the State of *Maine* is entitled to the custody and possession of the lots until those shall come into existence for whose benefit the reservation was made, and may maintain trespass against strangers to the title for stripping the land of its timber and trees.

Trespass *quare clausum*, for an alleged trespass in cutting trees on lots numbered 53, 54, and 55, in township No. 18, granted to the proprietors of certain land prizes, drawn in virtue of the act of *Massachusetts*, passed *Nov.* 9, 1786, establishing a land lottery, and another act in addition thereto, passed *June* 20, 1788, which township has not yet been incorporated as a town or plantation. In each of these grants, there was a reservation of four lots of 320 acres each, for public uses ; " one for the use of a public grammar school forever ; one for the use of the ministry ; one for the first settled minister ; and one for the benefit of public education in general, as the General Court shall hereafter direct." On a plan of the land granted, made by the proprietors and accepted by the State, the names of the respective proprietors to whom the lots were drawn, were entered on the lots, and on the lots 53 and 54 was written the word, " Minister." The facts were agreed by the parties, and they agreed, that if in the opinion of the Court, the action can be maintained on proof of the cutting of trees on these lots, and on the plea of not guilty, the action can be maintained, it was to stand for trial. If not, it was to be dismissed.

The case was argued in writing, by *J. A. Lowell*, for the State, and by *Mellen*, for the defendant.

*For the State*, it was said, that the question presented for the decision of the Court, was this; that as the land reserved had not vested in those for whose use it was intended, because not yet *in esse*, in whom was the title vested during the period between the time of the grant, and the coming into existence of the person or corporation for whose benefit the reservation was made? It was argued, that by the separation act, *Maine* became entitled to all the rights and powers before existing in *Massachusetts*; that the State held the reserved land, either as part of the public domain, or was invested with it in trust for those for whom the benefit thereof was intended, by virtue of her sovereignty; that such was the view of the legislature in passing the *stat.* 1831, *c.* 510, *sec.* 9, for the sale and settlement of public lands, directing the land agent *to take care* of the lots reserved for public uses, and preserve them from trespassers; and that this act was constitutional. But that if the fee was in the proprietors, or in *Massachusetts, Maine* was in possession of the reserved lots, and could maintain trespass against strangers to the title; and that the defendant, being a mere trespasser, without right or title, cannot take advantage of a want of title in the State. *Shapleigh* v. *Pillsbury*, 1 *Greenl.* 289; *Little* v. *Palister*, 3 *Greenl.* 6; *Taylor* v. *Townsend*, 8 *Mass. R.* 411; *Cutts* v. *Spring*, 15 *Mass. R.* 135; *Read* v. *Davis*, 4 *Pick.* 216; *Davis* v. *Mason, ib.* 156; *Campbell* v. *Arnold*, 1 *Johns. R.* 511; *Jackson* v. *Haven*, 2 *Johns. R.* 22; *Stuyvesant* v. *Thompson*, 9 *Johns. R.* 61; *Wickham* v. *Freeman*, 12 *Johns. R.* 182.

*For the defendant*, it was contended, that unless the State had title, the action could not be maintained, for these were mere wild lands; that the act of 1831, applied only to lands never granted by the State, and had no relevancy to this case; that *Maine* had no power over lands granted by *Massachusetts* before the separation; that the title to the whole township, including these lots, vested by the grant in the proprietors, where it still remains, or if not, in *Massachusetts* and not in *Maine*. The action therefore cannot be maintained. *Rice* v. *Osgood*, 9 *Mass. R.* 38; *Inhabitants of Porter* v. *Griswold*, 6 *Mass. R.* 430; 3 *Dane, c.* 76, *art.* 10, *sec.* 20; *Humphrey* v. *Whiting*, 3 *Pick.* 158.

The opinion of the Court was drawn up by

EMERY J. — One of the first objects of forming our State Government, was for providing security and order throughout the territory comprising the State. We were a part of the Commonwealth till the act of separation, which has become a part of our constitution. By that we may be aided in coming to a conclusion as to the merits of the present action.

By the act of separation, and the adoption of the constitution, we have succeeded to all the sovereignty of the Commonwealth of *Massachusetts*, for the regulation of the great subjects of State Rights. Our title to our portion of the public lands is the same as hers. Our jurisdiction over the territory is complete. Redress for injuries to those lands is to be sought in our Courts. But the principles of law as to individual and corporate rights are to govern our decision. Where the State has no right or title against individuals or corporations, but a mere despotic interference, it is not to be favored. But when it employs its power for the preservation of property, to take which, there is no person in existence, though it is not considered as passing by escheat to the government, it may well enough be considered as entitled to the possession against mere strangers and trespassers. It is not by this construction, intended, that the State becomes proprietor absolutely, and so authorized to defeat the terms of the grant made by *Massachusetts ;* but to maintain them, for the security of those, who may be entitled to the benefit. When the first minister shall be settled on the territory, he would have a right to enter on the lot reserved to him, and as pastor of the first parish in the town, would become possessed of the lot reserved for the ministry, but for the *stat. c.* 254, of *Feb.* 12, 1824, which vests it in the inhabitants of the town, and not in a particular parish, and the town will be entitled to the management of the school land, in whom the fee is vested by that statute, for the use and support of school funds therein forever.

For certain purposes, proprietors who have granted land, as in the case *Proprietors of Shapleigh* v. *Pillsbury*, were held entitled to maintain an action against a trespasser while the fee was in abeyance.

In cases where reservations are made for charitable uses, and the beneficiaries are not in existence, we hold it within the legitimate

exercise of sovereignty, for the State to take possession, and preserve the property for the benefit of its citizens, for those charitable purposes intended.

At the end of the first section of the act of 9th *Nov.* 1786, granting the lottery for the sale of fifty townships, of which No. 18 is a part, it is provided, that there be reserved out of each township four lots of 320 acres each, for public uses ; to wit, one for the use of a public grammar school forever, one for the use of the ministry, one for the first settled minister, and one for the benefit of public education in general, as the General Court shall hereafter direct. The additional act of *June* 20*th,* 1788, was passed for the accommodation of some of the proprietors of the prize lots drawn in that lottery, who had drawn or were entitled to prize lots, equal to the contents of a township. By that act those persons were entitled to receive a deed of the same within and upon the borders of the tract appropriated to the lottery, *reserving however the lots appropriated to public uses in such township.*

The lot reserved for the benefit of public education in general, as the General Court shall hereafter direct, necessarily falls within the direct power of the State. And the other reservations are so intimately connected with the subject of education, for the most enlarged charity, that we apprehend the *stat.* of *March* 28, 1831, *c.* 510, *s.* 7, 9, indicate the just resolution of the State to preserve the property for the charity to be promoted.

We are satisfied, therefore, that upon the plea of not guilty and proof of any trespass committed, the action can rightfully be maintained *by the State, inasmuch as the township has not been incorporated as a town or plantation.*