STATE OF MAINE *vs.* CHARLES W. MULLEN.

Penobscot.    Opinion February 24, 1903.

*Lands Reserved for Public Uses.    Plantations.    Towns.    Priv. and Spec. Laws,*
*1901, c. 377; Stats. 1824, c. 280; 1828, c. 393; 1832, c. 39; 1842, c. 33;*
*1845, c. 149; 1846, c. 217; 1848, c. 82; 1850, c. 196.    R. S.,*
*1883, c. 5, §§ 12–19; c. 12, §§ 40, 46.*

By the Act of 1850, ch. 196, it was provided that in all townships or tracts of land unincorporated or not organized for election purposes, sold or granted by the State, in which lands have been reserved for public uses, the land agent should have the care and custody of such reserved lands until such tract or township is incorporated or organized for election purposes.    And the land agent was directed to sell for cash the right to cut and carry away the timber and grass from off the reserved lands which have been located, the right to continue until the tract or township should be incorporated or organized for election purposes.

The lands so reserved for public uses in Indian Township were duly located, and the right to cut timber and grass thereon had been sold by the land agent and such right had vested in the defendant prior to the incorporation in 1901 of a portion of Indian Township as the town of Millinocket. The reserved lands as located are all within Millinocket as incorporated. The acts of trespass complained of were the cutting of trees on the reserved lands after the incorporation of Millinocket.    *Held:*—

1.    That the right of the defendant to cut timber on the reserved lands was terminated by the incorporation as a town of a portion only of Indian Township, but in which portion the reserved lands were located; and therefore that the acts complained of were trespasses.    .        .    .

2.    But that, although the State is the trustee of reserved lands, and may maintain trespass for injury to them, it is such trustee only until the township is incorporated, and that in this case its interest in the reserved lands in question was terminated by the incorporation of Millinocket.    Therefore it cannot maintain this action.

3.    That when a portion of a township is incorporated, and no exception or provision is made with reference to the reserved lands, it is to be deemed that the legislature intended the reserved lands within the portion incorporated to follow that portion and vest in it; and that it did not intend the right to cut timber to continue in a grantee thereof, under the Act of 1850, ch. 196, after the title to the land itself had vested in the town by incorporation.

4.    That the title to the reserved lands and the timber thereon, within the town of Millinocket, have vested in that town.

Agreed statement.  Plaintiff nonsuit.

The case was submitted by the parties to the law court upon facts agreed as follows:

This was an action for trespass to real estate, with a count de bonis for certain beech, maple, birch and other trees, not suitable for any purpose but for fire-wood, cut and carried away by the defendant between the first day of August, 1901, and the date of the writ, March 18, 1902, from lands reserved for public 'uses in Indian Township numbered Three, in the County of Penobscot, and under the care of the Land Agent of the State.

A portion of said Indian Township numbered Three was incorporated into a town by the name of Millinocket by chapter 377 of the Private and Special Laws of 1901. Within the limits of the territory of such incorporated town, organization of which was had, under said Act of 1901, previous to the alleged trespasses, are included the aforesaid lands so reserved for public uses and duly located in said township prior to the incorporation and organization of said town.

By deed dated November 8, 1850, and recorded in the land office of said State, in vol. 1, page 18, of records of deeds of timber on reserved lands, Anson P. Morrill, as Land Agent of said State agreeably to the provisions of chap. 196 of the Laws of 1850, entitled: "An Act in relation to lands reserved for public uses," approved August 28, 1850, conveyed to one Henry E. Prentiss, the right to cut and carry away the timber and grass from the reserved lots in said Indian Township until such time as the said township or tract shall be incorporated, or organized for plantation purposes, and no longer, and at the times of the alleged trespasses the said right to cut and carry away said timber and grass had, by sundry mesne conveyances from said Prentiss, vested in the defendant and others as tenants in common.

If, upon the foregoing agreed statement of facts, the court should be of the opinion the action is maintainable, the case is to stand for trial, otherwise the plaintiff is to be nonsuit.

C. J. Dunn, for plaintiff.

C. F. Woodard, for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, SPEAR, JJ.

SAVAGE, J. This action is for trespass to real estate, with a count de bonis for certain beech, maple, birch and other trees, not suitable for any purpose but fire-wood, cut and carried away by the defendant between the first day of August, 1901, and the date of the writ, March 18, 1902, from lands reserved for public uses in Indian Township numbered Three, in the County of Penobscot, and under the care. of the Land Agent of the State.

A portion of said Indian Township numbered Three was incorporated into a town by the name of Millinocket by chapter 377 of the Private and Special Laws of 1901. Within the limits of the territory of such incorporated town, organization of which was had, under said Act of 1901, previous to the alleged trespasses, are included the lands so reserved for public uses and duly located in said township prior to the incorporation and organization of said town. By deed dated November 8, 1850, and recorded in the land office of the State, the Land Agent of the State, agreeably to the provisions of chap. 196 of the laws of 1850, conveyed to one Henry E. Prentiss, the right to cut and carry away the timber and grass from the reserved lots in Indian Township until such time as the said township or tract shall be incorporated, or organized for plantation purposes, and no longer. At the times of the alleged trespasses, the right of Prentiss to cut and carry away timber and grass under the foregoing conveyance had vested in the defendant and others as tenants in common.

Upon the foregoing succinct statement of facts, as agreed to by the parties, the case is submitted to this court to determine whether or not the action is maintainable. The proper determination of it will depend upon the answer to one or more of the following questions:

1. Was the right of the defendant to cut timber on the reserved lands in Indian Township terminated by the incorporation as a town of a portion only of the township, but in which portion the reserved lands are included?

2. If so, has the State any interest in the reserved lands since the incorporation of the town, which entitles it to maintain this action?

3. If so, are beech, maple, birch and other trees, not suitable for any purpose but for fire-wood, to be regarded as "timber" within the meaning of chap. 196, of the laws of 1850?

If either the first or second question is answered in the negative, it will not be necessary to consider the third.

By the Act of 1850, chap. 196, it was provided that in all townships or tracts of land unincorporated or not organized for election purposes, sold or granted by the State, or by Massachusetts, or by both States jointly, in which lands have been reserved for public uses, the Land Agent should have the care and custody of such reserved lands until such tract or township is incorporated or organized for election purposes. And the Land Agent was directed to sell for cash the right to cut and carry away the timber and grass from off the reserved lands which have been located, the right to continue until the tract or township should be incorporated or organized for election purposes. The Land Agent did sell the timber and grass on the reserved lands in Indian Township to the predecessor in title of the defendant. The township was never organized for plantation purposes, but a portion of it, which included the reserved lands, was incorporated as the town of Millinocket, prior to the acts of trespass complained of.

Whether this incorporation was such an incorporation of the township as determined the defendant's right to cut timber and grass under the Act of 1850 is a question not without difficulty. It is evident from the context, that the word "tract" in the clause which contains the right to cut "until the tract or township shall be incorporated" does not refer to the reserved lands themselves, but to the larger territory sold or granted out of which lands are reserved. In terms the right is to continue until the larger territory or the township is incorporated.

Before determining what the State did do with reference to the reserved lands by incorporating the town, it will be useful to inquire

what the State might do. Prior to the separation of Maine from Massachusetts, the latter State, in making grants or sales of public lands, had generally pursued the policy of making reservations of lands for public uses from the lands granted. The beneficiaries of these public uses were not ordinarily in esse at the time of the grant. Massachusetts retained the legal title for the use of the beneficiaries when they should come into existence. After the separation, as held in *State* v. *Cutler,* 16 Maine, 349, this State by virtue of its sovereignty became entitled to the care and possession of these reserved lands until those should come into existence for whose benefit the reservation was made. The State became trustee and as such could maintain trespass for stripping the land of timber.

By Stat. 1824, c. 280, as revised by Stat. 1828, c. 393, the State by general law enacted that there should be reserved in every township, suitable for settlement, whether timber land or otherwise, one thousand acres of land to be appropriated to such public uses, for the exclusive benefit of such town, as the Legislature should thereafter direct. By this legislation, the State constituted itself a trustee, retaining as such the legal title, but subjecting the land to such future public uses, for the benefit of the town, as the State itself might afterwards direct, until the town should be incorporated, when, under the Statute of Uses, the title would vest in the town. *Dillingham* v. *Smith,* 30 Maine, 370. Until incorporation the reserved lands and the funds arising therefrom are therefore under the general control of the State. *Dudley* v. *Greene,* 35 Maine, 14. The State has placed no limitation upon its power to designate the uses, or to control thereafter the title vested in the beneficiaries, only that they are to be public and for the benefit of the town.

This court in *Union Parish Society* v. *Upton,* 74 Maine, 545, had occasion to consider the general character of the trusteeship of the State and its power even to change designated uses before the vesting of title in the beneficiaries, and it was held that the State might, as was provided by the Act of 1832, c. 39, direct that income from the proceeds of lands reserved for the use of the ministry should be applied to schools, if the fund or the land had not become vested in some particular parish.

By the Act of 1842, c. 33, the State first provided for the custody of funds derived from the timber and grass on lands reserved for public uses. This act authorized the seizure and sale of timber, grass or hay cut by trespassers on reserved lands, and directed that the proceeds should be covered into the county treasury, to be paid to the town rightfully owning it, when applied for. In 1845, c. 149, cutting of timber on reserved lands was authorized, the proceeds to be disposed of as the proceeds of grass on public lots are disposed of.

The first general designation of public uses was made in 1846 by c. 217, by which it was provided that the proceeds of the sale of timber, or from trespasses on the reserved lots in unincorporated places should be paid into the county treasury and constitute funds for school purposes, of which the income only was to be used. . If there were no inhabitants of the township, the interest was to be added to the fund. If there were inhabitants, and they had become organized into a plantation, and had organized one or more school districts, the interest on the funds was to be applied to the support of the schools, and in proportion to the number of scholars, if more than one school district; and if a district or plantation consisted of parts of two townships, the interest was to be distributed according to the proportion of such funds arising in each township, for the support of schools in that township.

In 1848, c. 82, it was provided that the proceeds of sales of timber and grass on the reserved lots should be paid into the State treasury, instead of into the county treasuries. By c. 196 of the laws of 1850, under a provision of which this controversy has arisen, the State treasurer was directed, after deducting expenses, to pay the balance of proceeds received from sales of timber and grass on the reserved lands "to the authorities provided by law to receive the same, when they shall hereafter exist, until which time the funds arising from said reserved lands shall remain in the treasury." And the above named statute provisions, so far as they relate to the designated use of these funds, their creation, custody and manner of expenditure, remain practically unchanged down to the present time. R. S., c. 5, §§ 12 to 19 inclusive.

It would therefore appear that the State, according as it reserved to itself in the Act of 1828 the power to direct, has directed that the use for which reserved lands are to be held is the support of schools, and this use follows the proceeds of the sales of the lands themselves. R. S., c. 12, §§ 40, 46. *Harrison* v. *Bridgeton*, 16 Mass. 16. And while the funds arising from the reserved lands are used for school purposes the income is to be expended like other school moneys, section 46. But having been devoted to public uses, no doubt the State could more particularly direct its use. It might appropriate it to a particular school or a particular grade of schools. It might appropriate it to the schools in a particular part of a plantation or town. The only limitations expressed are that the use shall be public and for the benefit of the town. That the use of the fund for the support of schools is a public use goes without saying, and if the Legislature deems that any particular application of school moneys within the town is for its benefit, we think their determination is conclusive.

It follows that upon the incorporation of a township, or a part of a township, from which lands have been reserved for public uses, the State has the lawful power to make such provision as it sees fit for the vesting of the reserved lands, and for the application of the school moneys arising therefrom. If it divides the township and incorporates a part, it may divide the reserved lands, as was done in the case of *Argyle* v. *Dwinel*, 29 Maine, 29. It may, we think, expressly assign the reserved lands to the portion incorporated, or it may expressly reserve them for the part unincorporated. And it would have been competent for the Legislature, in the incorporation of Millinocket out of a portion of Indian Township, to declare that the reserved lands in the whole township should vest in the new town. But no such declaration was expressly made, and we are left to inquire whether in the absence of express declaration, any implication arises either way.

Bearing in mind that the reserved lands are within the geographical limits of the new town, is it or not to be presumed that the Legislature intended them to go with and belong to the new town? The newly-incorporated town embracing the reserved lands, was it

such an incorporation as was fairly within the contemplation of the Act of 1850, by which the defendant's right to cut timber was to be continued until the township was incorporated?

In cases of doubtful construction the legislative intent sometimes may be considerably illuminated by a consideration of the consequences which may follow one or another of varying interpretations. The State held the lands as trustee "until incorporation" of the township, just as the grantee of the right to cut timber held that "until incorporation." Stat. 1850, c. 196. The same phrase has the same meaning evidently in both places in the same Act. Suppose it were to be held that the Act of 1850 was only to be satisfied by an incorporation of the entire township. Then what has become of the reserved lands and the fund which has arisen· from them? Of course they did not vest in Millinocket upon its incorporation, for it was not the entire township. Equally, of course, for the same reason, they will not vest in the remaining portion of the township, whenever, if ever, it shall become incorporated, or in any subdivision of the township, if it shall be further divided for the purposes of incorporation. And there is no ground for any presumption that the entire township will ever become incorporated as one town. If this view is the correct one, the State, by incorporating Millinocket, has left the title to the reserved lands and the school funds arising therefrom wholly indeterminate. There is no provision of law by which a dollar can be expended, although it will not be denied that the exigency has arisen within the township, which was contemplated by the reservation of the lands, namely the settling of inhabitants in sufficient numbers to require the expenditure of money for public schools. Can it be supposed that the Legislature still intended to hold these lands in trust, and, perchance, to vest them and their income wholly in the remainder of the township? Is it to be considered that the Legislature intended that the remainder of the township was ever to have any interest in the lands which were incorporated as a part of Millinocket? If so, it seems singular that it did not say so. When these lands were being incorporated together with the rest, if it was intended to make any reservation of interest in the State for the benefit of the remainder of the township, the burden is

certainly upon those who assert that intention to answer why it was not expressed.

Upon the whole, we are of opinion that it was the legislative intent that the reserved lots embraced within Millinocket, should pass to that town and be vested in it, and that that intent is made sufficiently apparent from the fact that the lands were within the limits of the town, and were not excepted from the results which ordinarily follow the incorporation of a township, including reserved lands. And we are also of opinion that when that portion of a township which includes reserved lands is incorporated, it is properly to be deemed, as to such lands, an incorporation of the township within the meaning of the Act of 1850.   It is to be deemed that the Legislature intended the reserved lands within the portion incorporated to vest in that portion, unless otherwise expressed, and that it did not intend the right to cut and carry timber and grass to continue in a grantee thereof, after the title to the land itself had vested in a town by incorporation.

From this conclusion, it appears that the acts of the defendant done after the incorporation of Millinocket were trespasses; but it also appears that by that very incorporation, the State ceased to be trustee of the reserved lands, and now has no interest in them, by which it can maintain this action.

In accordance with the stipulation, the entry must be,

*Plaintiff nonsuit.*