**Charles R. CUSHING et al.**

v.

**Richard S. COHEN et al.**

Supreme Judicial Court of Maine.

Argued May 2, 1980.

Decided Oct. 7, 1980.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Gerald M. Amero (orally), Portland, Linwood Hand, Houlton, for plaintiffs.

Lund, Wilk, Scott & Goodall, Martin L. Wilk (orally), Kay R. H. Evans, Asst. Atty. Gen., Augusta, for defendants.

Before WERNICK, GODFREY, NICHOLS, GLASSMAN and ROBERTS, JJ.

WERNICK, Justice.

Early in 1973 the Department of the Attorney General issued the so-called "Schepps" Report on the Public Lots. This Report made the point that the rights to cut timber on some of the public lots of this state, that were granted during the period 1850–75 by an agent of the state pursuant to legislative directives,[1] may not have encompassed all the timber and all subsequent growth but, rather, may have been confined to trees existing at the time of the grant, of particular sizes and species.

In consequence of the Schepps Report, in May 1973 several persons brought a civil action in the Superior Court (Kennebec County)[2] naming as the defendants in the action Jon A. Lund, in his capacity as Attorney General of Maine, and Fred Holt, in his capacity as Forest Commissioner of the State of Maine.

The plaintiffs sought a judgment adjudicating the exact nature and scope of rights claimed by them to cut timber on the public lots. After an extended series of pleadings, discussed hereinafter in more detail, the parties agreed to a reference of the case. The issues to be submitted to the Referee were stated to be:

"1. Whether or not the public lot cutting rights granted by the State of Maine during the period 1850–1875 related to and conveyed only the right to cut timber which was in existence at the time of the grant or whether such rights also included the right to cut timber thereafter coming into existence.

"2. Whether or not the public lot cutting rights granted by the State of Maine during the period 1850–1875 related to and conveyed only the right to cut species and sizes of trees considered at the time of the grant to be suitable and merchantable for then prevailing commercial purposes, such as, without limitation, building houses or ships, or being squared off and cut into beams, rafters, planks and board, or whether on the other hand, such rights related to all or other sizes and all or other species of trees."

In May, 1979, the Referee filed his Report recommending entry of judgment adjudicating that the plaintiffs had valid rights to cut the timber on certain public lots and that these rights related to the cutting of trees of all sizes and species and encompassed the cutting of timber existing at the time of the original grants as well as the timber thereafter coming into existence.

1. For example, see P.L. 1850, c. 196 § 2; R.S. 1857, c. 5 § 11.

2. The plaintiffs, owners of land in certain unorganized townships, were: Charles Cushing; Great Northern Nekoosa Corporation, a Maine corporation with a place of business in Millinocket; International Paper Company, a New York corporation with a place of business in Jay; Prentiss & Carlisle Company, a Maine corporation with a place of business in Bangor; and Bradford Wellman, Richard Wheaton and Peter Seamans, trustees of a trust holding title to, and rights in, land.

Over objections by the defendants, the Superior Court accepted the Referee's Report and ordered entry of the judgment recommended by the Referee. From the judgment so entered the defendant Attorney General and the defendant Commissioner of Conservation have appealed to this Court.[3]

At the oral argument of the appeal, questioning by the Justices raised the issues whether interests of the State of Maine as sovereign were directly involved in this action, and, if so, whether sovereign immunity precluded maintenance of the action. Since these issues had not been discussed in the briefs on appeal, the parties were ordered to address them in supplemental briefs.

In their supplemental briefs all of the parties urge us to hold that sovereign immunity does not affect this proceeding. Their arguments emanate from two foundational contentions: (1) the nature of the action and the status of the named parties are such that sovereign immunity does not apply; and (2) by virtue of the Attorney General's having made the State of Maine a "counterclaimant", the State of Maine has affirmatively sought an adjudication of the merits of the issues involved and therefore sovereign immunity becomes inapplicable.

We reject as untenable the first of the foundational contentions. As to the second, we conclude that the issues it raises should not be decided on the record before us. We therefore entertain the appeal as it is presently postured only to vacate the judgment entered and to remand the case to the Superior Court for further proceedings as delineated hereinafter in this opinion.

*1.*

In making their first basic contention to avoid applicability of sovereign immunity, the plaintiffs stress that they do not ask for an award of monetary damages but seek only a declaration of rights and injunctive relief. Hence, plaintiffs say, sovereign immunity does not preclude maintenance of their action.

If some jurisdictions have resorted to the distinction plaintiffs urge upon us, see *O'Neill v. State Highway Department,* 50 N.J. 307, 235 A.2d 1 (1967); *Textron, Inc. v. Wood,* 167 Conn. 334, 355 A.2d 307 (1974), others have held unequivocally that sovereign immunity applies fully to declaratory judgment actions, particularly where the title to, or rights in, real estate may be at issue. *State ex rel. Rheinfrank v. Gienow,* 20 Ohio St.2d 17, 252 N.E.2d 163 (1969); *West Park Shopping Center, Inc. v. Mashet-er,* 6 Ohio St.2d 142, 35 Ohio Op.2d 28, 216 N.E.2d 761 (1966); *Executive Air Service, Inc. v. Division of Fisheries and Game,* 342 Mass. 356, 173 N.E.2d 614 (1961). *See also Unzicker v. State,* Ala., 346 So.2d 931 (1977); *Retail Clerks Local 187 AFL-CIO v. University of Wyoming,* Wyo., 531 P.2d 884 (1975); E. Borchard, Declaratory Judgments 2d 374 (1941) (Uniform Declaratory Judgments Act does not affect the doctrine of sovereign immunity). In view of the other unique circumstances of the case at bar (discussed below in more detail), which involves the State's special status as trustee of the public lots, we are unwilling to hold sovereign immunity inapplicable to the instant action of plaintiffs in its present procedural posture.

Plaintiffs also seek to avoid the bar of sovereign immunity on the ground that the State of Maine as sovereign is in no respect a party against which the action has been brought. Plaintiffs contend that their action is brought against only particular State agencies charged with the supervision and management of the public lots, to prevent them from implementing unlawful policies devised by them. That this is the situation, so that sovereign interests of the State of Maine are not really involved, is shown, say the plaintiffs, by their last "Amended Com-

---

**3.** A first purported appeal by these defendants (in September of 1979) was remanded to the Superior Court, pursuant to Rule 54(b) M.R. Civ.P., because the judgment entered on the docket failed to reflect disposition of counterclaims by which defendants sought converse declarations to those sought by plaintiffs. On remand, the Superior Court adjudicated the counterclaims to reflect the same adjudication made on plaintiffs' complaint. Thereafter, on November 21, 1979, the instant appeal was taken.

plaint for Declaratory Relief and Injunctive Relief" and their last "Amended Answer to Counterclaim" both filed on April 16, 1975, in which plaintiffs name as the defendants *only* those persons serving in official capacities as the Attorney General, the Forest Commissioner, the Commissioner of the Department of Conservation and the Director of the Bureau of Public Lands.

The point sought to be established is that these pleadings, even if recognizing that plaintiffs' rights at issue originated by virtue of grants from the State of Maine, nevertheless assert those rights not against the State as sovereign but rather against agents of the State, in an effort to prevent the agents from

> "taking any action to interfere with, or which in any way affects adversely the timber and grass rights owned by the plaintiffs . . . ;"

and

> "from taking any action to implement any portion of the '1972 Attorney General's Report on the Public Lots' which in any way affects adversely the property rights of the plaintiffs . . . . "

■ We reject this purported characterization of the substantive gravamen of the present action. Despite plaintiffs' ingenious undertaking to make it appear that this action is directed at allegedly unlawful activity by state agencies, the content of the pleadings manifests plainly that the essence of the case concerns the sovereign interests of the State of Maine. It is in its sovereign capacity that the State of Maine holds title, as trustee, to all public lots situated in unorganized townships and plantations. *Opinion of the Justices*, Me., 308 A.2d 253 (1973); *State v. Mullen*, 97 Me. 331, 54 A. 841 (1903); *State v. Cutler*, 16 Me. 349 (1839). It was in that sovereign status as trustee of the public lots that the State of Maine authorized the granting of the cutting rights here in issue by a series of legislative directives. *See* P.L. 1850, c. 196 § 2; R.S. 1857, c. 5 § 11. *See also Bragg v. Burleigh*, 61 Me. 444 (1871).

■ We conclude, therefore, that the real party in interest in this case is the State of Maine as sovereign and that the applicability of sovereign immunity as a bar is not avoided by plaintiffs' tactic of camouflaging the action to give it the appearance of seeking to prevent state officials, or agencies, from exceeding lawful authority. *See Drake v. Smith*, Me., 390 A.2d 541, 544; *cf. Executive Air Service, Inc. v. Division of Fisheries and Game, supra; Unzicker v. State, supra.*[4]

#### 2.

The second foundational ground asserted for avoiding applicability of sovereign immunity is that even if the State of Maine as sovereign may be directly involved as the real party in interest, the Attorney General has seen fit to make the State of Maine a "counterclaimant" and thereby this proceeding has been effectively transformed into one brought *by* the State of Maine. Hence, sovereign immunity does not prevent the adjudication which is sought by the State of Maine, since the function of sovereign immunity is to protect the sovereign as to actions brought against it, not by it.

■ This Court regards the immunity from suit as "one of the highest attributes inherent in the nature of sovereignty" and, accordingly, it has said that, generally, a specific authority conferred by an enactment of the legislature is requisite if the sovereign is to be taken as having shed the protective mantle of immunity. *See Drake v. Smith, supra,* at 543. From this it would tend to follow—even were we to assume for argument's sake that in an action brought against the State of Maine as sovereign the Attorney General of the State may avoid applicability of sovereign immunity simply by bringing a counterclaim in the name of the State—that at minimum the record must show plainly and unequivocally the Attor-

---

4. The record shows that this is precisely the position the Attorney General adopted before the Referee. His brief said that "[t]he real party in interest is, of course, the State of Maine in its capacity as trustee of the public reserved lands."

ney General's actual intention to abandon the immunity which protects the sovereign against having its sovereign interests impaired, without its consent, by judicial action.

■ Without presently deciding whether the Attorney General, simply by virtue of his office, has the authority to involve the State of Maine as sovereign in an action in which the State would otherwise be immune from involvement by resorting to the tactic of making the State of Maine a "counterclaimant", we conclude that in the present situation the record before us fails to make plain the actual intention of the Attorney General to abandon the sovereign's immunity.

The record reveals a persistent ambiguity regarding whether, in filing a counterclaim in which the State of Maine was designated as one of the counterclaimants, the Attorney General truly intended to abandon the protection of sovereign immunity. In addition, the record fails to establish that the State of Maine had ever been made an actual party defendant entitled *as such* to become a counterclaiming party. To make this point plain we set forth in the detail the procedural history of this action, and we stress that this history will underscore a fundamental problem pervading the entirety of the record. This problem is the continuing refusal, or at least reluctance, of all the formal parties to the action to make a record before the Superior Court which would deal squarely with the question whether interests of the State of Maine were at stake, thereby to provide opportunity for the Superior Court to decide (1) whether the State of Maine had in fact been made a party defendant to the action, or (2) if not, whether the action could proceed further unless and until the State of Maine was made a party defendant, or (3) whether in any event the action could proceed further because the interests of the State of Maine that were involved were its sovereign interests and therefore an action against the State of Maine as a party defendant was precluded by sovereign immunity.

Plaintiffs commenced this action by filing on May 16, 1973 a "Complaint for Declaratory Relief", which named only two parties defendant: "Jon A. Lund, in his capacity as Attorney General of the State of Maine, ... and Fred Holt, in his capacity as Forest Commissioner of the State of Maine . . . ." While thus avoiding naming the State of Maine as a defendant, plaintiffs nevertheless alleged in the substantive allegations of their complaint that (1) they held cutting rights to timber and grass on certain public lots "by reason of the purchase of such rights and the conveyance thereof *by the State of Maine*" (emphasis added); and (2) they sought a declaration of the "legal relationship and the status of the plaintiffs *with the State of Maine* . . . ." (emphasis added) On June 5, 1973 plaintiffs filed an amended complaint containing changes that have no relevance for present purposes.

On May 18, 1973 the named defendants Lund, as Attorney General, and Holt, as Forest Commissioner, filed a motion to dismiss the complaint. One of the grounds for dismissal asserted was:

"5. The Attorney General and the Forest Commissioner have been sued in their capacities as agents of the State and the State, as sovereign, is immune from this suit."

A memorandum of law was submitted in which one of the points made was:

"[t]hat the action is, in reality, one against the State, even though it has been brought nominally against the Attorney General and the Forest Commissioner clearly appears from the Complaint itself."

The record now before us discloses that the Superior Court never took formal action with respect to this motion to dismiss and that defendants never by any formal means withdrew, or abandoned, it.

On January 10, 1974 the Attorney General and Forest Commissioner, as the defendants in the action, filed a responsive pleading designated "Answer and Counterclaim." The caption of this pleading identified the Attorney General Lund and the Forest Commissioner Holt as those who were "De-

fendants and Counterclaimants", and the pleading further referred to the State of Maine and Donaldson Koons, Commissioner of the Department of Conservation of the State of Maine as having been added under the designation "Counterclaimants." The counterclaim sought declarations in essence converse to those sought by plaintiffs' complaint, and it additionally prayed for a declaration that *"the State of Maine* (as a "counterclaimant") is entitled to 100% of the rental for annual campsite leases on all public lots." (emphasis added) At the same time, this "Answer and Counterclaim" took pains to make plain that the "State of Maine", acting through its Attorney General, its Commissioner of the Department of Conservation, and its Director of Bureau of Forestry, were filing this particular pleading

"[*s*]*ubject to, and without waiving, the Motion to Dismiss heretofore filed by* Defendants Lund and Holt . . . ." (emphasis added)

Thus, in its initial appearance in the case the counterclaim which is being urged upon us as the document establishing the abandonment of sovereign immunity itself belies the validity of that contention. It expressly reiterated, and continued to rely upon, sovereign immunity as a ground for dismissal of the action and clarified that any other position it might take in the case was subject to, and contingent upon, the ultimate determination of the sovereign immunity issue.

Review of the subsequently filed pleadings, as amended during the year 1974 and prior to April 16, 1975, discloses the same reservations regarding both the status of the State of Maine as a party to this action and the particular position being taken by the Attorney General on the applicability of sovereign immunity.

The plaintiffs responded to defendants' January 9, 1974 "Answer and Counterclaim" by filing on January 29, 1974 a pleading entitled "Answer to Counterclaim and Counterclaim Against the Additional Counterclaimants." In this pleading the plaintiffs identified the "counterclaimants"

against them as being not only the Attorney General Lund and the Forest Commissioner Holt, the only persons plaintiffs had named as parties defendant, but also the State of Maine and Koons (Commissioner of Conservation). As to *all* of these persons named as *counterclaimants*, plaintiffs realleged against them the allegations previously made in their Amended Complaint.

On July 19, 1974 an "Amended Answer and Counterclaim" was filed, the caption of which continued to distinguish between those whom plaintiffs had originally named as defendants and those who were being identified as "counterclaimants", to–wit, the State of Maine and Koons, who had not been made defendants. This amended pleading reasserted that the counterclaim was being made "[*s*]*ubject to, and without waiving, the Motion to Dismiss.*" (emphasis added) Thus, even though again the State of Maine was being designated a "counterclaimant", again the counterclaim was made subject to and contingent upon an ultimate determination of the still pending, and undecided, question of sovereign immunity.

When we concentrate on the last amendments to the pleadings, all made on April 16, 1975, we continue to see a failure definitively to remove, or clarify, these persisting difficulties.

The plaintiffs' final "Amended Complaint for Declaratory Relief and Injunctive Relief" again identified as those who were parties defendant *only* those persons who were then holding the offices of Attorney General, Forest Commissioner, Commissioner of the Department of Conservation and Director of the Bureau of Public Lands. More particularly, the State of Maine was *not* named as a party defendant. In addition, this final "Amended Complaint" of the plaintiffs undertook to refocus the allegations and the prayer for relief so as to make it appear that the substantive gravamen of the action was directed against allegedly unlawful actions by state agencies, rather than against sovereign interests of the State of Maine. In short, plaintiffs continued to manifest the same approach to the

case they had persistently taken from its inception: to seek to avoid applicability of sovereign immunity by giving the action the form and appearance of being a suit against state agencies, not against the State of Maine as sovereign, and as being concerned with the unlawful activity of these agencies.

Also on April 16, 1975, the various state agencies named as the defendants by the plaintiffs' last "Amended Complaint" filed a responsive pleading thereto, entitled "Answer to Amended Complaint, and Counterclaim." Named as the "Defendants" and "Counterclaimants" filing this pleading were:

> "Joseph E. Brennan, in his capacity as Attorney General of the State of Maine, Richard Barringer, in his capacity as Director of the Bureau of Public Land . . ., *State of Maine*, and Donaldson Koons, Commissioner of the Department of Conservation . . . ." (emphasis added)

Such manner of designation left ambiguous whether this last pleading purported to be an undertaking by the Attorney General to make the State of Maine a party *defendant* to the action, notwithstanding that the plaintiffs had scrupulously avoided so doing. The ambiguity persisted because the word "and" could signify that, as had been done in the pleadings filed during 1974 by Attorney General Lund and Forest Commissioner Holt, the intention was to identify the State of Maine only as one "counterclaimant" being added to other counterclaimants, rather than to purport to include the State of Maine as a party *defendant* in addition to those formally named as the defendants in the action by plaintiffs' last "Amended Complaint."[5] It should be emphasized, too, that nothing said in the defendants' April 16, 1975 "Answer to Amended Complaint, and Counterclaim" purported to withdraw, or disavow, the pending and still undecided motion to dismiss interposing sovereign immunity as a bar to maintenance of plaintiffs' action.

Furthermore, portions of the record subsequent to these amended pleadings continue to reflect ambiguity regarding the scope of the issues. For example, the "Stipulation" purporting to identify the issues submitted to the Referee as being the two issues described above (at p. 921), stated additionally that

> "[a]ll other issues, including whether public lot cutting rights have expired or terminated by reason of organization of a township, *are reserved*." (emphasis added)

Arguably, then, even though the "Stipulation" was prefaced by the statement that

> "both Plaintiffs and Defendants are desirous of obtaining a judicial determination of said enumerated issues . . .",

the sovereign immunity issue could fairly be regarded as one of those still "reserved", rather than abandoned.

It is also readily discernible from the record that the Department of the Attorney General was using the pendency of the sovereign immunity issue, as raised by the pending and still undecided motion to dismiss, as bargaining leverage to seek to induce plaintiffs to agree to refer the case to a Referee. An August 1974 letter written by an Assistant Attorney General to counsel for one of the plaintiffs says:

> "[t]he necessity for hearing this [motion to dismiss] may be obviated if you and I are able to reduce to a binding form our agreement limiting the scope of the case to the two issues we have discussed."

The record, however, reveals no formal action by the parties to withdraw the motion to dismiss, or otherwise to dispose of it. In light of the position previously stated unequivocally on the record by the Attorney General, we cannot treat the informal statement in the August 1974 letter of the Assistant Attorney General—a statement

---

**5.** It is evident that the plaintiffs, at least, believed that the "Answer to Amended Complaint, and Counterclaim" neither intended to make, nor effectively made, the State of Maine a party defendant in the action. In plaintiffs' "Amended Answer to Counterclaim", also filed April 16, 1975, plaintiffs omitted the "State of Maine" among those they listed in the caption as "defendants."

which had neither been brought to the specific attention of the Superior Court justice nor reciprocated as a matter of record by the plaintiffs—taken in combination with the fact that the case ultimately did go to a Referee, as sufficient to establish that the Attorney General intended to abandon, and had abandoned, the pending motion to dismiss and, in particular, sovereign immunity as a ground of dismissal. *Cf. Drake v. Smith, supra.*

Beyond the inadequate status of the record relative to the issue of sovereign immunity, the further problem exists that the record leaves in doubt whether the State of Maine would be bound by a judgment entered in this proceeding. As our extensive survey of the pleadings has shown, the plaintiffs carefully avoided making the State of Maine a party defendant, and nothing in the pleadings can fairly be interpreted as having effectively made the State of Maine a party defendant to the action.[6]

Although a formal court order may not always be necessary to allow one who has not been named by plaintiffs as a party defendant to become a party as a "counterclaimant", *see Casco Bank & Trust Company v. Cloutier,* Me., 398 A.2d 1224 (1979), we think such formal action is necessary in the circumstances of this case.[7] *Cloutier* itself is plainly distinguishable. There, the bank had brought an action against Mr. Cloutier as the defendant, to recover from him the unpaid balance alleged due on a promissory note. Mr. Cloutier's answer included a counterclaim, which named both him and his wife, co–signor of the promissory note, as "counterclaimants." The bank's reply purported to treat *only Mr. Cloutier* as a proper counterclaimant. In its subsequently amended complaint, however, the bank specifically added the wife as a party defendant to the action. When we held in *Cloutier* that the joining of the wife as a counterclaimant in the initial answer was sufficient under Rules 13(h) and 20(a) M.R.Civ.P., despite the absence of a court order, we particularly noted that the Superior Court justice had been *specifically* aware of this joinder and could be taken to have approved it by his decision of a subsequent motion for summary judgment. *Id.,* at 1227, n.2. The instant record discloses no such recognition, or approval, by the Superior Court justice.

In light of the foregoing problems disclosed of record, we vacate the judgment entered and remand the case to the Superior Court for further proceedings and appropriate action in accordance with the following directives.

On remand, in light of our decision herein that the substantive gravamen of this action pertains to interests of the State of Maine as sovereign, all the parties shall state unequivocally on the record their respective positions as to whether, pursuant to Rule 19 M.R.Civ.P., joinder of the State

---

**6.** Even the Notice of Appeal filed on November 21, 1979 fails to identify the State of Maine as a party defendant, or a party in any respect.

**7.** Rule 21 M.R.Civ.P. provides, as here pertinent:

"Parties may be dropped or added *by order of the court* on motion of any party or of its own initiative at any stage of the action and on such terms as are just."

Although the issue is not definitively settled, there is solid case law interpreting the parallel Federal Rule 21 to require leave of court to add additional parties to an action. *See Age of Majority Educational Corp. v. Preller,* 512 F.2d 1241 (4th Cir. 1975); *Keller v. University of Michigan,* 411 F.Supp. 1055 (E.D.Mich.1974). *See, e. g., Spangler v. Pasadena Board of Education,* 537 F.2d 1031, 1035, n.4 (9th Cir. 1976); *Zarate v. State Department of Health and Rehabilitative Services,* 347 F.Supp. 1004 (S.D. Fla.1971) *aff'd. per curiam,* 407 U.S. 918, 92 S.Ct. 2462, 32 L.Ed.2d 803 (1972). Addition of parties by ex parte amendment of the pleadings, even when such amendments are allowed as a matter of right before a responsive pleading is served pursuant to Rule 15(a) of the Maine Rules of Civil Procedure, is disfavored and a court order under the more specific provision of Rule 21 is preferred. *See* R. Field, V. McKusick & K. Wroth, *Maine Civil Practice* 2d § 21.2 (1970). *See also Age of Majority Educational Corp. v. Preller, supra ; Keller v. University of Michigan, supra ; International Brotherhood of Teamsters v. American Federation of Labor,* 32 F.R.D. 441 (E.D.Mich.1963). Particularly in a case such as the one now before us, involving a question of sovereign immunity, a clear and formal understanding of the status of the State of Maine as a party is necessary.

of Maine as a party defendant in the action is "needed for just adjudication." The Superior Court justice shall then decide whether the State of Maine is such an "indispensable" party and if so, he shall make a formal order which will assure that the State of Maine is made a party to the action, thereby to be bound by any judgment entered.

In addition, on remand, the Attorney General shall make unequivocally plain on the record the position he takes on behalf of the State of Maine as to the applicability to this action of sovereign immunity—more particularly, whether (1) he has the authority to abandon, for the State of Maine as sovereign, reliance upon sovereign immunity to preclude maintenance of this action; and, if so, (2) whether he does abandon the sovereign's immunity against the maintenance of this action by plaintiffs.

After the Attorney General has plainly stated his position in these respects, the Superior Court justice shall then decide whether or not the action of plaintiffs must be dismissed because maintenance of it is precluded by sovereign immunity. More particularly in this regard, even should the Attorney General take the position that he has the authority to, and does, abandon the sovereign's immunity against maintenance of plaintiffs action, the justice shall address and decide whether, *sua sponte,* he must nevertheless dismiss the action on the ground that sovereign immunity either deprives the Superior Court of jurisdiction of the subject—matter of the action or prevents plaintiffs from asserting a claim upon which relief may be granted. *See Drake v. Smith, supra,* at 543.

The entry shall be:

Judgment of the Superior Court vacated; case remanded to the Superior Court for further proceedings in accordance with the opinion herein.

*No* costs on appeal.

All concurring.